IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

ED COYLE,                           )

    PLAINTIFF,                      )

VS.                                 )          CV-03-H-0047-S

ORKIN EXTERMINATING CO., INC.       )

    DEFENDANT.                      )

**ENTERED**

**MAY 1 9 2004**

MEMORANDUM OF DECISION

    The Court has before it the March 18, 2004 motion of defendant Orkin Exterminating Co., Inc. ("Orkin") for summary judgment.  Pursuant to the Court's March 30, 2004 order, the motion was deemed submitted, without oral argument, on April 27, 2004.

I. Procedural History

    Plaintiff Ed Coyle commenced this action on January 8, 2003 by filing a complaint in this court alleging that his employer, Orkin Exterminating Co., Inc., is liable for subjecting him to discrimination on the basis of his age and retaliating against him for asserting federally protected rights.  Plaintiff contends that defendant's alleged conduct constitutes (1) age discrimination under Alabama state law and (2) retaliation for asserting rights under the Family and Medical Leave Act ("FMLA"),

29 U.S.C. § 2601 et seq. (See Compl. Counts I, II.)[1]
Defendant's March 18, 2004 motion for summary judgment asserts
that no genuine issue of material fact exists and that defendant
is entitled to judgment as a matter of law. (See generally
Def.'s Mot. Summ. J.)

On March 18, 2004, defendant submitted evidence[2] in support
of the motion and also filed a supporting memorandum of law.
Plaintiff submitted evidence[3] in opposition to the motion on
April 27, 2004 and on the same date filed an opposing brief. On
May 5, 2004 defendant Orkin filed a reply brief in further
support of its motion for summary judgment. All of these briefs,
along with the submitted evidence (other than the two

---

[1] While plaintiff's brief in opposition to defendant's
motion for summary judgment extensively argues that defendant
Orkin retaliated against plaintiff under the Alabama Workers'
Compensation Act, there is no count in the complaint alleging
such a violation. (See generally Compl.) The only reference to
the worker's compensation act in the complaint is made in the
first paragraph alleging jurisdiction and venue. That statement
reads: "Additionally, the plaintiff seeks relief under state law
for worker's compensation retaliation." (Compl. ¶ 1.)
Therefore, worker's compensation under Alabama state law is not
an issue in this case and will not be considered in connection
with the motion for summary judgment.

[2] Defendant submitted the May 9, 2003 deposition of
plaintiff Ed Coyle; the March 11, 2004 declaration of Brad
Chambers; and the March 12, 2004 declaration of Tony Kruszewski.

[3] Plaintiff submitted the May 9, 2003 deposition of Ed
Coyle; the May 9, 2003 affidavit of William Maxwell; and the
April 27, 2004 affidavit of Billy Wesson. The two affidavits are
not sufficient under Fed. R. Civ. P. 56(e), as more fully
discussed in footnote 11, infra.

2

affidavits), have been considered.

### II. Standards for Evaluating a Summary Judgment Motion

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. See id. at 323. Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. See id. at 324.

The substantive law will identify which facts are material and which are irrelevant. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. See Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such

that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson</u>, 477 U.S. at 248.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.  <u>See</u> <u>id.</u> at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial.  <u>See</u> <u>Fitzpatrick</u>, 2 F.3d at 1115-17 (citing <u>United States v. Four Parcels of Real Property</u>, 941 F.2d 1428 (11th Cir. 1991)(en banc)).  If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial.  <u>See</u> <u>Fitzpatrick</u>, 2 F.3d at 1115.  Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways.  First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial.  Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence

4

sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to _affirmatively_ show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question.  This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires that the movant point out to the district court that there is an absence of evidence to support the non-moving party's case.  See Fitzpatrick, 2 F.3d at 1115-16.  If the movant meets its initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts.  See Lewis v. Casey, 518 U.S. 343, 358 (1996) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)).

### III. Relevant Undisputed Facts[4]

In 1992, at the age of fifty-two, Ed Coyle was hired by Orkin as a salesman of residential and commercial pest control contracts.  (See Dep. of Coyle 29, 41, 53, 93.)  Between 1994 and 1996, plaintiff was a member of the "President's Club," the qualification for membership being to meet a sales minimum varying by year.[5]  (See id. at 56-7.)  Around this same time period, Coyle also gained membership in the "silver service," which rewarded those Orkin salespeople who had achieved a certain level of sales with use of a company vehicle.[6]  (See id. at 54-8.)

Then, in 1998, the Birmingham Orkin branch at which Coyle was employed shifted from residential and commercial sales to purely commercial sales.  (See id. at 53-4.)  While Plaintiff had been employed to work both residential and commercial contracts, during his years of peak performance he testifies that he had gotten to a point of selling more commercial contracts than

---

[4] If facts are in dispute, they are stated in the manner most favorable to the plaintiff.  See Fitzpatrick, 2 F.3d at 1115.

[5] Plaintiff testifies in his deposition that his best estimate is that in 1995 he brought in sales amounting to $180,000 and in 1996 he brought in sales approaching $190,000.  (See id. at 57.)

[6] Plaintiff testifies that at the time he qualified for the "silver service," membership was predicated on the salesperson making around $150,000 in sales.  (See id. at 56.)

residential contracts.  (See id. at 58.)  Nevertheless, plaintiff
testifies that commercial sales are in fact more difficult than
residential sales because of the "lead factor," which is greater
in residential sales than commercial sales.  (See id. at 86.)
That is, with commercial sales, the salesman is required to "work
the phone, work the Yellow Pages, work the alpha list from the
branch and do calls on folks," (id.) while with residential
sales, the calls are more likely to come into the branch
unsolicited (id.).  As a result, plaintiff's total sales
decreased when the shift to purely commercial contracts occurred.
(See id. at 84-5.)  In fact, plaintiff's sales decreased such
that he was no longer eligible for membership in the "silver
service," and was required to turn in his company car.  (See id.
at 76-9.)  He was criticized by his managers for spending too
much time at the branch on the phone, and not enough time out of
the branch office "hustling" new customers.  (See id. at 86, 88.)

    Plaintiff's decreasing sales may have been the result of a
work-related injury which prevented Coyle from working for some
period of time.  (See id. at 32, 79.)  In July 2001, Coyle
tripped and fell on the front stairs of the Orkin office.  (See
id. at 32-3.)  As a result of the fall, Coyle dislocated his
shoulder, hurt his knees, and sustained injuries to his face.
(See id.)  The injury was handled by Orkin as a worker's
compensation claim; Orkin paid all medical bills associated with

7

the injury and paid Coyle worker's compensation at a rate of two-thirds of what plaintiff's weekly average salary had been.  (<u>See</u> <u>id.</u> at 33-4.)  In sum, Coyle's injury prevented him from returning to work through September of 2001 and required him to undergo twenty-four weeks of rehabilitation.[7]  (<u>See</u> <u>id.</u> at 33, 35-6.)  When Coyle returned to work in early October 2001, he returned to the same sales position that he had left in July.  (<u>See</u> <u>id.</u> at 44.)  However, he testified that he was a "little slower" on the job than he had been before the accident.  (<u>See</u> <u>id.</u> at 121-22.)

In the Spring of 2001, Brad Chambers had become the branch manager of the office in which plaintiff worked.  (<u>See</u> <u>id.</u> at 90.)  Chambers managed the office and the three commercial salespeople who worked there, Coyle, Mr. Cletus Fitzgerald, and Ms. Jennie Vann.  (<u>See</u> <u>id.</u> at 91.)  At this time, the Plaintiff was sixty-one years old, the oldest salesperson in the branch office.  (<u>See</u> <u>id.</u> at 91-2.)  Fitzgerald was in his forties or fifties, and Vann was in her thirties.  (<u>See</u> <u>id.</u> at 92.)  Soon after plaintiff returned from his worker's compensation leave in early October 2001, Chambers held a meeting of the commercial sales staff in the Birmingham branch and announced sales goals.

_____

[7] The 2001 injury was not the first time plaintiff was unable to report to work due to medical reasons.  In 1994, plaintiff was unable to work for approximately two months due to an operation and recovery from prostrate cancer.  (<u>See</u> <u>id.</u> at 40-1.)

(<u>See</u> <u>id.</u> at 95-8.)   At that meeting, the commercial sales employees, Coyle, Fitzgerald and Vann, were required to sign statements acknowledging that they understood the sales goals for November 2001 through January 2002 to be $10,000 per month and that failure to meet those goals could affect employment at Orkin.  (<u>See</u> <u>id.</u> at 97.)  This goal of sales amounting to $10,000 per month or $120,000 a year had been the standard at Orkin since at least 1996.[8]  (<u>See</u> <u>id.</u> at 64.)

On January 29, 2002, Coyle was called to a meeting with Chambers and Mr. Tony Kruszewski, Regional Sales Manager over Birmingham.  (<u>See</u> <u>id.</u> at 108.)  At the time the meeting was called, Coyle had not met the $10,000 a month sales goal for November 2001 through January 2002.  (<u>See</u> <u>id.</u> at 109.)  Discussed at the meeting was what could be done to improve the sales production of the branch.  (<u>See</u> <u>id.</u> at 108.)  Ultimately, plaintiff Coyle was terminated at the January 29 meeting.  (<u>See</u> <u>id.</u>)

On the same date that plaintiff Coyle was terminated, his co-worker in commercial sales, Jennie Vann, was also terminated.[9]

---

[8] In fact, Plaintiff's commercial sales employment description contained the same sales target of $120,000 per year. (<u>See</u> Dep. of Coyle 147-48.)

[9] Chambers explains the reason for the termination to be that Vann failed to meet the required sales standard.  Plaintiff asserts he is unaware of the reason for Vann's dismissal.  (<u>See</u> Chambers Decl. ¶ 5; <u>see also</u> Dep. of Coyle 109.)

(See id. at 109; see also Chambers Decl. ¶ 5.)   Also on the same date, Coyle's co-worker in commercial sales, Cletus Fitzgerald, was demoted to service technician.[10]   (See Chambers Decl. ¶ 5; see also Dep. of Coyle 109-110.)   Plaintiff acknowledges that his sales requirements and the sales requirements of his co-workers were the same.   (See id. at 156.)   Thus, all three commercial sales persons in the Birmingham branch who signed in October 2001 a statement that they understood their sales goal for the next three months and who failed to attain the required goal suffered an adverse employment action at the end of the three month period.

## IV. Applicable Substantive Law and Analysis

Plaintiff's complaint contains the following claims: (1) age discrimination under Alabama state law and (2) retaliation under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq.   (See Compl. Counts I, II.)   Defendant's motion for summary judgment contends that Plaintiff has failed to establish a *prima facie* case for either of the counts asserted in the Complaint against defendant Orkin and alternatively argues an insufficiency of evidence of pretext even assuming a *prima facie* case.   (See generally Def.'s March 18, 2004 brief and its May 5, 2004 reply

---

[10] Chambers explains the reason for the demotion to be that Fitzgerald failed to meet the required sales standard.   Plaintiff asserts he is unaware of the reason for Fitzgerald's demotion. (See Chambers Decl. ¶ 5; see also Dep. of Coyle 109.)

brief.)

## A.   Age Discrimination under Alabama State Law

Count I of Coyle's complaint alleges that he was terminated from his employment at Orkin because of his age and in violation of Alabama state law, Ala. Code § 25-1-20 *et seq*. (See Compl. ¶ ¶ 25, 26.)  The Alabama Age Discrimination in Employment Act ("AADEA") prohibits an employer from discriminating "against a worker 40 years of age and over in hiring, job retention, compensation, or other terms or conditions of employment." Ala. Code § 25-1-21.  In pertinent part, Alabama state law prohibits an employer from "discharg[ing] an individual, or otherwise discriminating against an individual with respect to compensation, terms, or privileges of employment, because of the age of the individual." Ala. Code § 25-1-22.  Further, "any employment practice authorized by the federal Age Discrimination in Employment Act shall also be authorized by this article and the remedies, defenses, and statutes of limitations, under this article shall be the same as those authorized by the federal Age Discrimination in Employment Act . . ." Ala. Code § 25-1-29. When read in tandem with the federal Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634, it becomes "self-evident that the AADEA's purpose and prohibitions are like the ADEA . . ." Dooley v. Autonation USA Corp., 218 F.Supp.2d 1270, 1277 (N.D. Ala. 2002), quoting Bonham v. Regions Mortgage, Inc.,

129 F.Supp.2d 1315, 1321 (M.D. Ala. 2001).  Therefore, the ADEA's principles govern in AADEA cases as well.  Id.  The same order and allocation of proof in cases under Title VII govern suits under the ADEA.  See id., quoting Chapman v. AI Transport, 229 F.3d 1012, 1024 (11th Cir. 2000) (en banc); see also O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 311 (1996).

In cases brought under the ADEA, the plaintiff bears the ultimate burden of proving that age was a determinative factor in the employer's decision to terminate his employment.  See Anderson v. Savage Laboratories, Inc., 675 F.2d 1221, 1224 (11th Cir. 1982).  Initially, to establish a prima facie case of age discrimination based on circumstantial evidence,[11] the plaintiff

---

[11] The Plaintiff has no direct evidence of age discrimination that is admissible.  See Pl.'s Brief in Opp. to Def.'s Motion for Summ. J. 6-7.  Plaintiff offers as possible direct evidence of intentional age discrimination the affidavits of Billy Wesson and William Maxwell, which assert that Orkin management was displeased with the hiring of older employees (see Wesson Aff. ¶ 4) and that in the opinion of the affiants, Coyle was terminated from Orkin because of his age and in retaliation for filing a worker's compensation claim (see id. at ¶ 6; see also Maxwell Aff. ¶ 9.).  The court would be willing to consider these affidavits, despite the fact that they were filed after the date set by the March 30, 2004 order, were they admissible under the Federal Rules of Evidence.  However, under Rule 602, "a witness may not testify to a matter unless evidence is introduced to support a finding that the witness had personal knowledge of the matter."  Fed. R. Evid. 602.  While Wesson and Maxwell may well have had personal knowledge of Orkin's employment practices during the time of their employ, they have no personal knowledge of Orkin management practices since the time of their retirement from Orkin in 1997.  (See id. at 3; see also Wesson Aff. ¶3.)  Further, under Rule 701, the opinion testimony of lay witnesses is limited to "those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful

must show by a preponderance of the evidence that: (1) he was a member of a protected age group and was adversely affected by an employment decision; (2) he was qualified for his current position or to assume another position at the time of discharge; and (3) there is evidence from which a reasonable fact finder could conclude that the employer intended to discriminate on the basis of age in making its employment decision.  See Mitchell v. USBI Co., 186 F.3d 1352, 1354 (11th Cir. 1999); see also Barnes v. Southwest Forest Indust., Inc., 814 F.2d 607, 609 (11th Cir. 1987).

In the instant case, it is undisputed that Coyle is a member of the protected age group and that he suffered an adverse employment action.  See Def.'s Mem. in Support of Motion for Summ. J. 5; see also Pl.'s Brief in Opp'n. to Def.'s Motion for Summ. J. 7.)  What remains at issue within the confines of the prima facie case is whether plaintiff Coyle was qualified to do the job from which he was discharged and whether there is evidence from which a reasonable fact finder could conclude that Orkin intended to discriminate against Coyle based on his age. (See id.)

---

to a clear understanding of his testimony or determination of a fact in issue." Fed. R. Evid. 701. While Wesson and Maxwell may well rationally perceive that Orkin management until 1997 would have terminated Coyle illegally, they have no rational perception as to why Coyle was terminated in 2002. For these reasons, the affidavits of Billy Wesson and William Maxwell will not be considered in making the ruling contained herein.

Coyle had been a salesman for Orkin since 1992 and had undisputedly met and exceeded sales goals for at least many of those years (see Pl.'s Brief in Opp'n. to Def.'s Motion for Summ. J. 7; see also Dep. of Coyle 29, 54-7).  However, it is also undisputed that Coyle was out of compliance with Orkin's sales goals during the time period of November 2001 to January 2002. (See Dep. of Coyle 109, 155-56; see also Pl.'s Brief in Opp'n. to Def.'s Motion for Summ. J. ¶ 8 and Def.'s Mem. in Support of Motion for Summ. J. 5.)  That is, Coyle did not bring in the minimum sales of $10,000 a month for November, December, and January of 2001.  (See id.)

Whether or not Coyle is or was "qualified" to perform the job of Orkin salesman is not an issue with which this court is inclined to spend much time, since traditionally the plaintiff bears a light burden in proving the *prima facie* case.  See Damon v. Fleming Supermarkets of Florida, Inc., 196 F.3d 1354, 1360(11th Cir. 1999) (noting that plaintiffs who have been discharged from a previously held position "do not need to satisfy the McDonnell Douglas prong requiring proof of qualification").  For purposes of the summary judgment motion, this court will assume, without deciding, that plaintiff was in fact "qualified" to perform the job in question since he "held the position for a significant period of time [and therefore] qualification for that position sufficient to satisfy the test of

14

a *prima facie* case can be inferred." Id., quoting <u>Young v. Gen.</u>
<u>Foods Corp.</u>, 840 F.2d 825, 830 n. 3 (11th Cir. 1998).
Allegations of poor performance will be considered only after the
*prima facie* case has been established and in the evaluation of
"the pretextual nature of an employer's proffered
nondiscriminatory reasons for termination." Id., citing <u>Clark v.</u>
<u>Coats & Clark</u>, 990 F.2d 1217, 1227 (11th Cir. 1993) (holding that
evidence of employee's performance reprimands does not establish
that employee was unqualified, but may indicate company was
legitimately concerned about employee's performance).

   In turning to the final at-issue element of the *prima facie*
case, this court considers whether plaintiff has shown that Orkin
intended to discriminate against Coyle because of his age when
making the decision to terminate him. Because allegations of
poor performance are properly considered only after a *prima facie*
case has been established, Coyle's alleged failure to meet sales
goals will not be considered within the confines of the *prima*
*facie* case. Properly considered, however, is the fact that
plaintiff was not the only commercial salesperson discharged from
Orkin. That Jennie Vann, a younger woman in her thirties, was
also discharged is probative to establish that Orkin did not
intend to discriminate against Coyle based on his age. (See id.
at 109-110; see also Dec. of Kruszewski ¶ 4.) Similarly, the
fact that Cletus Fitzgerald was demoted to the position of

15

service technician is at least evidence that Orkin did not intend to discriminate against Coyle on the basis of his age.[12]  (<u>See</u> Dep. of Coyle 110; <u>see</u> <u>also</u> Dec. of Kruszewski ¶ 4.)

However, this court is willing to assume that plaintiff has nevertheless met the light burden of establishing a *prima facie* case of age discrimination, since a reasonable fact finder could possibly conclude that Orkin intended to discriminate on the basis of age in making the decision to terminate Coyle. Plaintiff's long time employment with Orkin, coupled with the fact that he had previously met and exceeded job expectations, could possibly instill suspicion in a reasonable fact finder that Coyle had been discriminated against because of his age.

Working under the assumption that plaintiff has established a *prima facie* case of age discrimination, the possibility of summary judgment being granted in favor of the employer is not foreclosed.  <u>See</u> <u>Young</u>, 840 F.2d at 828, citing <u>Pace v. Southern Ry. Sys.</u>, 701 F.2d 1382, 1391 (11th Cir. 1983).  Orkin must rebut plaintiff's *prima facie* case with "a proffer of legitimate, non-discriminatory reasons for the plaintiff's discharge . . ."  <u>Id.</u>

---

[12] Plaintiff testifies that he does not know if Fitzgerald "was removed or if he requested transfer to the service station." (Dep. of Coyle 110.)  The evidence shows, however, that Fitzgerald was demoted to service technician because he failed to meet the sales quota required of the commercial sales associates in the branch.  (<u>See</u> Dec. of Kruszewski ¶ 4; <u>see</u> <u>also</u> Dec. of Chambers ¶ 5.)  The evidence also indicates that Fitzgerald was not terminated because he specifically requested the lower-paying position over termination.  (<u>See</u> <u>id.</u>)

at 828-29; see also McDonnell Douglas v. Green, 411 U.S. 792, 802-03 (1973).  In rebuttal, Orkin offers evidence that Coyle was discharged because of poor performance in the workplace.  Coyle admits that in October of 2001 Chambers held a meeting with all of the commercial salespeople, Cletus Fitzgerald, Jennie Vann, and plaintiff, during which it was announced that for "November, December, and January you had to sell thirty thousand dollars a month" (Dep. of Coyle 96-7); these were the same sales goals that Orkin had in place for several years (see id. at 100).  Coyle admitted in his deposition that he did not meet the sales goals for the November 2001 to January 2002 time period. (See id. at 109.)  Defendant Orkin asserts that plaintiff was discharged for failure to meet these sales goals.

The failure to meet a clearly established sales goal applicable to other similarly situated employees is a legitimate, non-discriminatory reasons for which an employer may terminate an employee.  See Young, 840 F.2d at 830 (noting that employer produced evidence of legitimate, non-discriminatory reasons for discharge where there was evidence that plaintiff's performance had declined); see also Damon, 196 F.3d at 1361 (holding that poor performance is a legitimate, non-discriminatory reason for discharging an employee).  Therefore, the burden shifts back to plaintiff to avoid summary judgment by offering enough probative evidence such that a reasonable jury might conclude that Orkin's

stated reason for terminating Coyle was a pretext for age discrimination.  See id.; see also Celotex, 477 U.S. at 322-23.

In his attempt to produce significantly probative evidence of age discrimination, plaintiff relies on the affidavit of Billy Wesson, which has been stricken from the record in its entirety for lack of admissibility under the Federal Rules of Evidence.[13] Therefore, plaintiff's remaining evidence of discrimination rests solely upon his past productivity, and alleged management expressions of productivity, years and months before his discharge.[14] (See Pl.'s Brief in Opp'n. to Def.'s Motion for Summ. J. 7-8.)  Specifically, plaintiff argues that his sales, "averaged for the time he was working during 2001," met and in

_____

[13] See infra footnote 11.

[14] The record is in dispute as to certain alleged conversations Coyle purportedly had with Orkin management.  Coyle alleges that when he returned from worker's compensation leave, Mr. Kruszewski rode with him to evaluate phone calls.  (See Dep. of Coyle 106.)  At the end of the day, Kruszewski allegedly asked Coyle how old he was and if he had plans to retire.  (See Dep. of Coyle 106-07.)  Coyle also alleges that Mr. Chambers asked him when he could retire, and again in the meeting in which Coyle was discharged.  (See id. at 123.)

These comments are denied by Orkin management, but do not create an issue of material fact which precludes summary judgment.  Even were they considered by this court, they would not be probative evidence sufficient to establish pretext. Plaintiff admits in his deposition that the question allegedly posed to him by management concerning retirement was reasonable, given the fact that plaintiff was only 3 to 4 years away from wanting to retire himself.  (See id. at 149-50; see also Ziegler v. Beverly Enter., 133 F.3d 671 (8th Cir. 1998) (stating that suggesting retirement to an employee who is performing poorly does not evidence unlawful bias)).

fact exceeded Orkin's $10,000 a month sales quota.  (Pl.'s Brief in Opp'n. to Def.'s Motion for Summ. J. 7.)  Plaintiff further emphasizes that in sum total for the year 2001, he achieved $106,000 in sales (see id.); in October alone Coyle brought in $56,000 in sales contracts (see id.; see also Dep. of Coyle 81.) Plaintiff also emphasizes the fact that Orkin did not take his sales for October of 2001 into account when assessing Coyle's performance "isn't the way they [usually] account for sales. They usually account for sales by the quarter.  In my mind, it should have been October, November, and December."[15]  (Dep. of Coyle 97; see also Compl. ¶ 14.)

However, plaintiff cannot survive summary judgment by substituting his own opinions regarding company policy for that of Orkin's policies.  See Dooley, 218 F.Supp.2d at 1281; see also Chapman, 229 F.3d at 1030 (stating that "a plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute his business judgment for that of the employer.  Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason.").  Orkin's clearly

---

[15] Plaintiff states later in his deposition: "To this day, I still believe that doing the November, December, and January, versus the October, November, and December was changed to fit their criteria . . . it was done that way.  And it excluded the month of October."  (Dep. of Coyle 153-54.)

stated expectation for the position of commercial salesperson at Orkin was to bring in sales amounting to $10,000 per month or $120,000 a year. (See Dep. of Coyle 147-48.) This sales goal had been in place and the standard at Orkin since at least 1996 (See id. at 64); it applied equally to all sales associates in the branch at which Coyle was employed (see id. at 96-100). Similarly, the more specific sales goal of meeting $10,000 in sales for the time period of November 2001 through January 2002 applied universally to all sales associates in the branch at which Coyle was employed. (See id. at 97.) Simply stated and regardless of his past performance, Coyle failed to meet this specific job expectation for the period immediately before his termination. (See id. at 109, 155-56.) His two younger commercial sales co-workers, Cletus Fitzgerald and Jennie Vann, were also evaluated and terminated or demoted at the end of January of 2002. Vann and Fitzgerald were subjected to adverse employment decisions based on their failure to achieve minimum sales for the same November 2001 through January 2002 time period. (See Chambers Decl. ¶ 5; see also Dep. of Coyle 109, 110, 156.)

Based on these admissible and undisputed facts, Coyle has not, with significantly probative evidence, rebutted Orkin's legitimate, non-discriminatory reason for discharging plaintiff. Accordingly, defendant's motion for summary judgment is due to be

granted with respect to plaintiff's AADEA claim for age discrimination.

**B.   Retaliation under the Family and Medical Leave Act**

In Count II of the Complaint, Plaintiff asserts a claim for discrimination under the Family and Medical Leave Act ("FMLA"). (See Compl. Count II.)   The allegation contends that Orkin terminated Coyle due to his medical leave of absence covering the time period of July 2001 until October 2001.   (See Pl.'s Mem. Opp'n. Summ. J. ¶ ¶ 8,9; see also Dep. of Coyle 35-6.)

The FMLA guarantees qualified employees the benefit of twelve weeks of leave for certain health and family emergencies, see 29 U.S.C. § 2612(2), including the birth, adoption, or foster care of a child and when the employee cannot "perform the functions of [his] position" because he suffers from a "serious health condition."   29 U.S.C. § 2612(a)(1).   To protect and preserve the availability of this right, the FMLA "creates two types of claims: interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act, and retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act." Wascura v. City of South Miami, 257 F.3d 1238, 1247 (11th Cir. 2001); see also Strickland v. Water Works & Sewer Bd. of the City of Birmingham, 239 F.3d 1199, 1206 (11th Cir. 2001).   To succeed

on a retaliation claim, an employee must demonstrate that his employer intentionally discriminated against him in the form of an adverse employment action for having exercised an FMLA right. See Strickland, 239 F.3d at 1207, citing King v. Preferred Tech. Group, 166 F.3d 887, 891 (7th Cir. 1999). "In other words, a plaintiff bringing a retaliation claim faces the increased burden of showing that his employer's actions 'were motivated by an impermissible retaliatory or discriminatory animus.'" Id., citing King, 166 F.3d at 891.

Coyle claims that Orkin violated the FMLA when it discharged him just a few months after he returned from his leave of absence protected under the FMLA. (See generally Compl. Count II.)  To establish a prima facie case under the FMLA, a plaintiff must present evidence that: (1) he availed himself of a protected right under the FMLA; (2) he suffered an adverse employment decision; and (3) there is a causal connection between the protected activity and the adverse employment decision.  See Wascura, 257 F.3d at 1248, quoting Parris v. Miami Herald Publ'g Co., 216 F.3d 1298, 1301 (11th Cir. 2000).  Following the establishment of the prima facie retaliation case, "we apply the same burden-shifting framework established by the Supreme Court in McDonnell Douglas."  Strickland, 239 F.3d 1199, 1207 (11th Cir. 2001).

It is undisputed that plaintiff suffered from the adverse

employment decision of discharge in this case and that plaintiff took medical leave of absence in mid-2001 and was terminated in 2002. (See Def.'s Mem. in Support of Motion for Summ. J. 6; see also Pl.'s Brief in Opp'n. to Def.'s Motion for Summ. J. 9.) Therefore, the first two elements of plaintiff's *prima facie* case are satisfied; only the third element remains, which requires a showing of a causal connection between the protected activity and the adverse employment action. As to this third element, the plaintiff must show that the protected activity and the adverse action were not "wholly unrelated." Clover v. Total Sys. Servs., Inc., 176 F.3d 1346, 1354 (11th Cir. 1999). More specifically, the burden of causation can be met by a showing of close temporal proximity between the protected conduct and the adverse employment action, unless there is undisputed proof that the employer had no knowledge of the protected activity at the time the decision was made. See Norman v. Southern Guaranty Ins. Co., 191 F.Supp.2d 1321, 1332 (M.D. Ala. 2002), citing Brungart v. BellSouth Telecomm., Inc., 231 F.3d 791, 798 (11th Cir. 2000). The requirement of a showing of "close temporal proximity" is not met, according to the Eleventh Circuit, where there is a substantial delay between the protected activity and the adverse employment action and there is an absence of other evidence tending to show causation. See Wascura, 257 F.3d at 1248. In Clark County School Dist. v. Breeden, the Supreme Court cited

23

with approval cases holding that a three to four month disparity between the adverse employment action and the protected act was insufficient to show causal connection.  See Breeden, 523 U.S. 268, 273 (2001), citing Richmond v. ONEOK, 120 F.3d 205, 209 (10th Cir. 1997) (holding a three month period to fail to meet the "close temporal proximity" requirement") and Hughes v. Derwinski, 967 F.2d 1168, 1174-75 (7th Cir. 1992) (holding a four month period to fail to meet the "close temporal proximity" requirement).

Plaintiff Coyle asserts that he meets the "close temporal proximity" element of causation.  It is undisputed that Coyle returned to work in early October 2001 and was terminated on January 29, 2002, almost four months later; it is also undisputed that Orkin knew of Coyle's medical leave of absence.  (See Pl.'s Brief in Opp'n. to Def.'s Motion for Summ. J. 9, 10; see also Def.'s Mem. in Support of Motion for Summ. J. 6.)  The Plaintiff argues that this evidence is sufficient to establish causation and analogizes his case with that of the Norman plaintiff. However, the two cases are not analogous.  In Norman, the plaintiff was presented with a memorandum warning her of excessive absenteeism on her first day of work after qualifying FMLA leave, which was her employer's proffered reason for her termination.  See Norman, 191 F.Supp.2d at 1332.  In Coyle's case, he and all commercial sales co-workers were given a sales

24

goal for a three month period that was no different than the
sales goals that had been in place since at least 1996. (<u>See</u>
Dep. of Coyle 64, 95-8.) All commercial sales employees were
required to sign a statement indicating that they understood the
sales goals for the November 2001 to January 2002 time period.
(<u>See</u> Dep. of Coyle 97.) Ultimately, all commercial salespeople
were held to the signed statement of sales goals; they were *all*
subjected to adverse employment actions when they failed to
attain the goal at the end of the time period. (<u>See</u> <u>id.</u> at 108-
110; <u>see</u> <u>also</u> Chambers Decl. ¶ 5.) Thus, unless plaintiff's
argument is that *all* commercial salespeople at Orkin were
retaliated against for Coyle's FMLA time (and there is no
evidence to support any such argument), there is no causal link
between Coyle's protected activity and the company's stated sales
goals in October 2001. As such, plaintiff has not established a
*prima facie* case of retaliation. Summary judgment is therefore
appropriate as to plaintiff's retaliation claim.

Assuming *arguendo* that the Plaintiff has shown a causal link
between his medical leave and his discharge, Orkin has
articulated a legitimate, non-discriminatory reason for
discharging Coyle. <u>See</u> <u>Chapman</u>, 229 F.3d at 1024. That is,
Orkin has articulated that Coyle was discharged for poor
performance in the workplace, which is a legitimate, non-

25

discriminatory reason for discharge.[16]  Therefore, the presumption of discrimination created by any establishment of the *prima facie* case is eliminated, and Coyle must come forward with evidence sufficient to permit a reasonable fact finder to conclude that the reason for discharge given by Orkin was not the real reason for the adverse employment decision.  See id.

Coyle's pretext argument is centered on the fact that "he had never been confronted with a three month window, apart from a normal fiscal quarter, in which he was required to sell $30,000 in contracts.  The customary way to account for sales was by normal fiscal quarters, which quarter would have been October, November, and December 2001."  (Pl.'s Brief in Opp'n. to Def.'s Motion for Summ. J. 10; see also Dep. of Coyle 97, 153-54.) Plaintiff argues that had Orkin maintained its "usual" system of accounting for employee sales in the fiscal quarter of October, November, and December of 2001, he would have been "well in excess of the $30,000 needed to meet the sales goal . . .," just as he had allegedly performed well until the November 2001 through January 2002 evaluation.  (Pl.'s Brief in Opp'n. to Motion for Summ. J. 10-11.)

Coyle's argument that the period of review was manipulated to retaliate against him for taking FMLA time does not survive defendant's motion for summary judgment.  The period of review

---

[16] See discussion *infra* p. 16-17.

applied on a uniform basis to all commercial sales employees, and while it well may have been a different time period than previously applied for review, it was universally enforced.[17] (See Dep. of Coyle 96-7; 100.)  Plaintiff was not unique in his failure to meet Orkin's sales goals for November 2001 through January 2002.  Neither of the other two commercial sales persons met the goal.  The fact that Jennie Vann, a woman in her thirties, was also discharged at the end of the three month sales period for the same stated reason as plaintiff is probative to establish that Orkin did not retaliate against Coyle for asserting a federally protected right.  (See id. at 109-110; see also Dec. of Kruszewski ¶ 4.)  Similarly, the fact that Cletus Fitzgerald, a member of the age group protected by the AADEA, was demoted to the position of service technician at the end of the three month sales period for the same stated reason as plaintiff evidences again to this court that Orkin did not intend to retaliate against Coyle for asserting his federally protected right.[18]  (See Dep. of Coyle 110; see also Dec. of Kruszewski ¶

---

[17] This court likewise declines to sit as a super personnel department, second-guessing Orkin's business decision.  See Mitchell, 186 F.3d at 1352 (11th Cir. 1999) (stating that federal courts should not reexamine business decisions and should refuse to second-guess company's assessment of plaintiff's qualifications.)

[18] Plaintiff testifies that he does not know if Fitzgerald "was removed or if he requested transfer to the service station." (Dep. of Coyle 110.)  The evidence shows, however, that Fitzgerald was demoted to service technician because he failed to

4.)

Because plaintiff has failed to put forth a *prima facie* case and separately because plaintiff has failed to come forward with sufficient probative evidence that a reasonable jury might conclude that Orkin's stated reason for terminating Coyle was a pretext for retaliation proscribed by the FMLA, defendant's motion for summary judgment is due to be granted with respect to plaintiff's claim of retaliation under the FMLA.

In summary, the Court finds that no material issues of fact remain and that defendant Orkin is entitled to judgment as a matter of law as to the age discrimination claim pursued in Count I under Alabama state law and as to the federal claim pursued in Count II under the FMLA.  A separate final order will be entered.

DONE this ___19^th___ day of May, 2004.


_____
SENIOR UNITED STATES DISTRICT JUDGE

_____

meet the sales quota required of the commercial sales associates in the branch.  (See Dec. of Kruszewski ¶ 4; see also Dec. of Chambers ¶ 5.)  The evidence also indicates that Fitzgerald was not terminated because he specifically requested the lower-paying position over termination.  (See id.)